[Crim. No. 1666. Second Appellate District, Division One.—June 19, 1928.]

THE PEOPLE, Respondent, v. EDWARD ESPALIAN, Appellant.

Joseph R. Marquette, Jr., for Appellant.

U. S. Webb, Attorney-General, and Frank Richards, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant appeals from a judgment of conviction of the crime of burglary and from an order denying his motion for a new trial.

The principal contention of appellant is that the evidence was insufficient to prove the *corpus delicti*. In brief, the evidence showed the presence of defendant in one of the corridors on the second floor of a lodging-house at the hour of 4:30 o'clock A. M. One of the witnesses testified that "he (defendant) ran around the corner (of the corridor) and I knew he didn't belong in the house and I stopped him and wanted to know what he was doing in the house." At the time defendant was discovered, he was standing within two feet of the door of one of the rooms in the lodging-house, which door was then slowly closing. On being questioned, defendant stated that he was a roomer in the lodging-house, and that he was "looking for a toilet." He was not a roomer there; nor did it appear that he used the toilet after his discovery. On the trial he admitted that before the time in question he had never been inside the lodging-house and had no personal knowledge of the location of any of the toilets therein. It was shown that in order to arrive at the place at which defendant was discovered it would have been necessary that he pass at least four different toilets. Following his arrest defendant made conflicting statements regarding the place of his residence. More particularly with reference to the room in the lodging-house which defendant claimed to occupy, one of the witnesses testified:

"Well, then I questioned him and he said, 'I live there,' and I says, 'Where?' And we went to the end of the hallway, and there is a stairway there, and then he took a look and sneaked down the stairs as fast as he could run, and we went right after him. . . . Why, I was going to question him, and all of a sudden he went down the back stairs and we went after him. He went out the door and slammed the door." (The court ordered stricken from the record the words "as fast as he could run" and "sneaked.") The witness continued: "Mr. Watt and myself were right behind him, and finally Mr. Watt caught up to him at Second and Bunker Hill, and he turned around and flashed a big knife right about like that (indicating).

I don't know just how long, but, oh, a two or three inch blade, and he said, 'You come near me and I will kill you.' He was going to stick me,. and I picked up a big garbage can—I had nothing else—and I hit him right in the head with it, and he finally gave in.'' On being searched, a passkey of the kind known as a ''pick'' was found on defendant's person, and it appeared in evidence that the lock on the door which was closing at the time defendant was first discovered in the lodging-house was one which could have been readily unlocked with the key in defendant's possession. Over the objection of defendant, one of the witnesses for the prosecution testified in substance that she occupied a room ''on the other side of the hall'' from the door which was closing at the time defendant was first discovered in the lodging-house, and that at about 4 o'clock in the morning of that day ''first my door was tried. Then I heard the door tried across the hall. . . . I heard the door tried across the hall from me. Then I heard a voice come through the hall and say, 'What are you doing here?' ''

The final determination of whether the *corpus delicti* was proved depends upon the motive which actuated defendant in entering the lodging-house. If, as defendant claimed, his only purpose was to visit a toilet, no crime would have been committed. On the other hand, if defendant entered the lodging-house with the intention of committing either grand or petit larceny, he was guilty of the crime of burglary. (Sec. 459, Pen. Code.)

From the circumstances of the case, it would appear that evidence tending to establish the *corpus delicti,* as well as evidence of the fact that defendant was the person, if any, who committed the crime of burglary, was so interwoven that evidence to the effect that the crime of burglary had been committed would also point to defendant's guilt.

It is manifest that, notwithstanding the denial of defendant of any intention on his part to steal anything while he was in the lodging-house, the question of what was his intent was one to be solved by the jury from the evidence in the case; and while other than defendant himself no one could testify directly regarding his intention in the premises, the jury had the right from the conduct of defendant and the surrounding circumstances to draw the inference

that his intention on entering the lodging-house was to commit the crime of grand or petit larceny, which, by the terms of the statute, constituted the crime of burglary. Considering the facts as portrayed by the evidence, this court is of the opinion that the *corpus delicti* was sufficiently established.

Appellant also complains of the admission in evidence, over his objection, of the testimony of the witness to the effect that at about 4 o'clock in the morning, immediately preceding the discovery of defendant in the lodging-house, first her door was "tried" and then she "heard the door tried across the hall." Taking into consideration the early hour at which the door of each of the two rooms was "tried," as well as the surrounding circumstances, it would seem clear that evidence of the character in question had a tendency to prove that someone was attempting surreptitiously to enter one or the other, or possibly both, of such rooms. But conceding (without deciding) the point with reference to the inadmissibility of the statement that "first my door was tried," we think the alleged error could have had no effect on the conclusion reached by the jury. In other words, after an examination of the entire case, including the evidence, this court is of the opinion that the error of which complaint is made did not result in a miscarriage of justice. (Sec. 4½, art. VI, Const.)

The judgment and the order denying the motion for a new trial are affirmed.

Conrey, P. J., and York, J., concurred.